GRANITE CITY STEEL COMPANY
et al., Petitioners,

v.

FEDERAL POWER COMMISSION,
Respondent,

St. Charles Gas Corporation, Missouri
Natural Gas Company, Laclede Gas
Company, Intervenors.

OWENS–ILLINOIS GLASS COMPANY,
Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent,

St. Charles Gas Corporation, Missouri
Natural Gas Company, Laclede Gas
Company, Intervenors.

Nos. 17150, 17151.

United States Court of Appeals
District of Columbia Circuit.

Argued March 25, 1963.

Decided May 23, 1963.

Mr. Willard W. Gatchell, Washington, D. C., for petitioners in No. 17150.

Mr. George J. Meiburger, Washington, D. C., with whom Messrs. Walter E. Gallagher, Washington, D. C., and Fred E. Fuller, Toledo, Ohio, were on the brief, for petitioner in No. 17151.

Mr. Howard E. Wahrenbrock, Solicitor, Federal Power Commission, with whom Messrs. Richard A. Solomon, General Counsel, Arthur H. Fribourg, Attorney, Federal Power Commission, were on the brief, for respondent. Mr. Peter H. Schiff, Attorney, Federal Power Commission, also entered an appearance for respondent.

Mr. J. David Mann, Jr., Washington, D. C., with whom Messrs. William W. Ross and Frederick Moring, Washington, D. C., were on the brief for intervenor Laclede Gas Company, argued for all intervenors.

Mr. John P. Randolph, Washington, D. C., was on the brief for intervenor Missouri Natural Gas Company.

Messrs. Norman A. Flaningam and Jacob Goldberg, Washington, D. C., entered appearances for intervenor St. Charles Gas Company.

Before BAZELON, Chief Judge, EDGERTON, Senior Circuit Judge, and FAHY, Circuit Judge.

EDGERTON, Senior Circuit Judge.

Mississippi River Fuel Corporation (Mississippi) operates a natural gas pipeline from Louisiana to the St. Louis region. We have for review [1] orders of the Federal Power Commission issued April 18, 1962 and June 15, 1962 [2] which reallocated Mississippi's capacity between its direct industrial customers and its public utility customers. The proceedings before the Commission began with applications by several utility customers for more gas under § 7(a) of the Natural Gas Act, 52 Stat. 824 (1938), 15 U.S.C. § 717f(a), and Laclede's demand for more gas under § 5(a) of the Act, 52 Stat. 823, 15 U.S.C. § 717d(a). No applications for certification of new or additional transmission facilities under § 7(c) of the Act as amended, 56 Stat. 83 (1942), 15 U.S.C. § 717f(c), are involved.

Petitioners for review are direct industrial customers of Mississippi. Such customers use one or both of two classes of service. A higher priced service, called "firm", may be curtailed on cold days if utility customers exceed their stated demands. A lower priced service, called "interruptible", may be interrupted at any time on two hours' notice. 27 F.P.C. at 705. According to uncontradicted testimony of a witness for Mississippi, both Mississippi and its "firm" industrial customers "understand and expect that firm service means continuous service without curtailment except under occasional, extraordinary circumstances. That is the kind of service they have been receiving and Mississippi has been rendering. Our interruptible customers expect and receive what is generally recognized as interruptible service; namely, service on a 'when available' basis, which means they expect and are set up to operate on the basis of frequent and extensive interruptions during the winter period."

The Commission has said that by the order of April 18, 1962, "we assigned to certain of Mississippi Fuel's existing utility (resale) customers, some 35,000 Mcf per day which Mississippi Fuel had been delivering to its direct industrial customers on an alleged 'firm basis'. This left approximately 25,000 Mcf per day available for delivery to said

1. Under § 19(b) of the Natural Gas Act of June 21, 1938, c. 556, 52 Stat. 831, as amended August 28, 1958, 72 Stat. 947, 15 U.S.C. § 717r(b).

2. Re Arkansas-Louisiana Gas Co., et al., 27 F.P.C. 697 (Opinion No. 355), rehearing denied, 27 F.P.C. 1257.

industrial customers. \* \* \* There can be no dispute that by our action as reflected in Opinion No. 355 the volume of 35,000 Mcf of natural gas per day was taken away from industrial consumers in the St. Louis area." It does not appear to be disputed that unless Mississippi either has capacity substantially in excess of what the Commission found to be its "sustained dependable delivery capacity",[3] or else obtains additional gas, this reallocation will cause Mississippi's service to its industrial customers to be interrupted regularly, frequently, and far more extensively than anything previously experienced or anticipated.

Section 7(a) of the Natural Gas Act, 15 U.S.C. § 717f(a), forbids the Commission to compel a natural gas company to "sell natural gas when to do so would impair its ability to render adequate service to its customers." We cannot reconcile the orders in suit with this restriction on the Commission's authority. Cf. In re Warwick Gas Corp., et al., 11 F.P.C. 667, 670 (1952), affirmed, 11 F.P.C. 679 (1952), rehearing denied, 11 F.P.C. 1496 (1952).

■■ The theory and purpose of the statutory restriction appear to be that persons desiring gas for the first time, or desiring more gas, should not get it by taking it away from existing lawful customers. We think Mississippi's service to its industrial customers will not be "adequate" within the meaning of § 7(a)

unless it meets their present and reasonably foreseeable requirements approximately as well as the service Mississippi has been furnishing them. This is no less true because Mississippi has contracted to supply the full requirements of many utility customers [4] while its contracts with industrial customers contain no full-requirements clause and are subject to cancellation on six months' notice. If service from other sources has become available since the Commission's orders were entered, this cannot retroactively validate the orders. Neither Michigan Consolidated Gas Co. v. Federal Power Commission, 203 F.2d 895 (3d Cir. 1953), nor Manufacturers Light & Heat Co. v. Federal Power Commission, 206 F.2d 404 (3d Cir. 1953), which the Commission cites, is to the contrary.

The reallocation of capacity between Mississippi's industrial customers and the public utility customers is set aside.

■ Certain petitioners contend that the Commission compelled Mississippi to impair its direct industrial service by requiring it to reduce the schedule of over-run penalties applicable to its utility customers. We think this requirement was within the Commission's authority under § 5(a) of the Act, 15 U.S.C. § 717d(a).

We do not reach petitioners' remaining contentions or pass upon portions of the orders which are not complained of.

Reversed in part, affirmed in part.

---

3. The Commission's reliance on the alternative of a large excess capacity does not appear to be supported by substantial evidence in the record. It appears to rest on a smaller excess delivered, largely from storage, 27 F.P.C. at 730, on a single peak day in 1958, and on

amounts delivered under very different conditions in 1950.

4. Cf. Mississippi River Fuel Corp. v. Federal Power Commission, 102 U.S.App. D.C. 238, 244, 252 F.2d 619, 625 (1957), cert. denied, 355 U.S. 904, 78 S.Ct. 331, 2 L.Ed.2d 260 (1957).